IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00445-KLM

JAMIE LEE DOWLING, individually, as surviving mother of Landyn Scott Dowling,

      Plaintiff,

SHAWN COOK,

      Plaintiff-Intervenor,

v.

GENERAL MOTORS LLC, and
KEY SAFETY SYSTEMS, INC.,

      Defendants.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Plaintiff's **Motion to Alter/Amend March 30, 2018 Order and Judgment** [#62][1] (the "Motion"). Plaintiff-Intervenor filed a Response [#70] in opposition to the Motion and Plaintiff filed a Reply [#74]. Plaintiff represents that both Defendants do not oppose the Motion. *Motion* [#62] at 1. The Court has reviewed the Motion, the Response, the Reply, the exhibits thereto, the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#62] is **GRANTED in part and DENIED in part**.

---

[1] "[#62]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

## I.  Introduction

The most significant dispute at issue in the Motion [#62] is about Plaintiff's attorneys' fees.  Despite multiple opportunities, counsel failed to adequately address the issue both prior to and at a two-day hearing on the merits of the underlying dispute.  Now, after subsequent entry of judgment by the Court, Plaintiff essentially seeks a "do-over" regarding attorneys' fees.  Counsel's only previous references to the issue were citation to an inapplicable case in Plaintiff's hearing brief and belated submission of a purported stipulated document showing the alleged amount of fees incurred.  As discussed in more detail below, Plaintiff's current efforts to address the omission are too little too late.  In the absence of admissible evidence, stipulated evidence and/or applicable legal authority, the Court cannot amend the judgment to award the fees requested.

## II.  Background

This wrongful death action arises from the tragic deaths of Jamie Lee Dowling's ("Plaintiff") two young children in a car accident that occurred on March 9, 2013.  Plaintiff filed the lawsuit in this Court on March 3, 2015, seeking to recover pursuant to the Colorado Wrongful Death Act, Colo. Rev. Stat. § 13-21-201(1)(c).  *Compl.* [#1].  The Complaint [#1] alleges that Plaintiff's car, a 2008 Chevrolet Cobalt, was defective in its design and manufacture, which resulted in loss of control and subsequent failure of the air bags to deploy.  The matter was transferred to the Southern District of New York on March 16, 2015, *see* [#6], and thereafter was remanded to this Court on March 10, 2017, for purposes of approval and distribution of settlement proceeds.  *See* [#8-2].  On April

27, 2017, all settlement proceeds with respect to Plaintiff's daughter, Raylee Kay Dowling ("Raylee"), were allocated to Plaintiff by the Court. *Minute Order* [#17].

On August 10, 2017, Plaintiff filed a Motion to Allocate Settlement Proceeds [#19] (the "Motion to Allocate") with respect to her son, Landyn Scott Dowling. Shawn Willis Cook ("Plaintiff-Intervenor"), who is Landyn's biological father, was permitted to intervene in this case on November 3, 2017. He thereafter filed a Response [#26] and Exhibits [#27] seeking 50% of the settlement proceeds. The Court scheduled an evidentiary hearing, which was held on January 9-10, 2018, regarding apportionment of the settlement proceeds. *See* [#49, #50]. On March 30, 2018, the Court issued a Final Order and Judgment [#58] (the "Final Order") that allocated sixty-five percent of the gross settlement proceeds to Plaintiff Dowling, and thirty-five percent of the gross settlement proceeds to Plaintiff-Intervenor Cook. The Court explicitly denied Plaintiff's request that the Court allocate the settlement proceeds after deduction for Plaintiff's attorneys' fees and costs. *Final Order* [#58] at 13-14. Pursuant to Fed. R. Civ. P. 58(a) and the Final Order, the Clerk of the Court issued the Final Judgment [#59] which, as relevant here, entered final judgment in favor of Plaintiff and Plaintiff-Intervenor against Defendants and ordered that Plaintiff and Plaintiff-Intervenor file bills of costs within 14 days of entry of the judgment.

On April 27, 2018, Plaintiff filed the instant Motion [#62] seeking to amend the Final Order and Final Judgment. The Motion [#62] does not seek modification of the percentage allocation of settlement proceeds. [#62] at 1. Instead, Plaintiff seeks to modify the Final Order and Final Judgment as follows:

(1) withdraw the final judgment and amend the Order to clarify that it is not a final judgment, that the case is not closed, and that no costs are awarded; (2) amend the Order to make clear that it does not preclude deduction from each beneficiary's share of the gross settlement proceeds as may be required by the Orders of the MDL Court or by the settlement agreement; and (3) amend the Order to provide that Plaintiff's counsel's attorney fees and costs of obtaining the settlement with the Defendants . . . will be paid to Plaintiff's counsel during disbursement of settlement proceeds, and that the proceeds net of those fees and costs, and net of MDL and settlement costs, will be distributed to Plaintiff Dowling and Plaintiff-Intervenor Cook in accordance with the percentage allocations determined by the Court in the Order.

*Id.* at 19.

After Plaintiff filed the Motion, Plaintiff-Intervenor filed his Motion for Attorneys' Fees and Costs Pursuant to Fed. R. Civ. P. 54(d) [#67] (the "Fee Motion") on May 4, 2018. Subsequently, the parties filed the Stipulated Motion and Notice to Dismiss Claims Against Defendants Only [#79] (the "Stipulation") on August 21, 2018. Pursuant to that Stipulation, and concurrently with this Order, Defendants were dismissed from the case with prejudice. *Minute Order* [#81].

### III. Legal Standard

The Court must first determine the applicable legal standard. The Motion [#62] states that it is filed pursuant to Fed. R. Civ. P. 59(e) "and other authorities cited herein[.]" [#62] at 1. The Motion [#62] states that it is "also timely as it seeks attorney fees" pursuant to Fed. R. Civ. P. 54(d)(2).[2] *Id.* at 14. While the Response [#70] also applies the Rule

---

[2] The Court does not construe Plaintiff's Motion [#62] as a motion for attorneys' fees pursuant to Rule 54(d)(2) for several reasons. First, an "award [of attorneys' fees] is uniquely separable from the cause of action" that is settled by a court's judgment on the merits, and therefore a post-judgment request for attorney's fees is not considered a motion to amend or alter the judgment under Rule 59(e) of the Federal Rules of Civil Procedure." *F.C.C. v. League of Women Voters of California*, 468 U.S. 364, 373 n.10 (1984) (internal quotation marks and citations omitted). Second, Plaintiff's supporting Affidavit [#10] does not comply with the Local Rule

59(e) standard, Plaintiff's Reply [#74] then contends that "the heightened standard for consideration of a Rule 59 motion should not apply" because the Order should be considered a ruling on a motion, not a final judgment. *Reply* [#74] at 4. Plaintiff then advocates that the Court should simply "review this Motion [#62] as it would any motion for reconsideration."[3] *Id.* In ascertaining what legal standard to apply, the Court will not pre-judge the merits of Plaintiff's arguments. Thus, because final judgment has entered in this case, the Court applies the standard set forth in Rule 59(e). *See Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1183 (10th Cir. 2000) ("Regardless of how it is styled, courts consider a motion filed within [28] days of the entry of judgment that questions the correctness of the judgment to be a Rule 59(e) motion.").[4] Moreover, a motion asking the Court to vacate the judgement is recognized as a Rule 59(e) motion. *Miller v. Leavenworth-Jefferson Elec. Co-op., Inc.*, 653 F.2d 1378, 1380 (10th Cir. 1981) (collecting cases); *see Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) ("[A]

---

requirements and Plaintiff has not provided sufficient information in the Motion for Plaintiff-Intervenor to ascertain whether the efforts and time allegedly expended by Plaintiff's counsel were reasonable. *See* D.C.COLO.LCivR 54.3(b) (requiring a motion for attorney fees to include "a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed"). Third, as the Court finds in its concurrent Order regarding Plaintiff-Intervenor's Fee Motion [#67], the Court agrees with Plaintiff that neither party can be considered a "prevailing party" with respect to the Motion to Allocate [#19] for purposes of Rule 54(d).

[3] Regarding this request in Plaintiff's Reply [#74], the Tenth Circuit has stated: "The federal rules do not recognize a motion to reconsider. A litigant seeking reconsideration must file a motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e), or a motion seeking relief from judgment under Fed. R. Civ. P. 60(b)." *Ysais v. Richardson*, 603 F.3d 1175, 1178 n.2 (10th Cir. 2010).

[4] The Clerk of the Court issued the Final Judgment [#59] on March 30, 2018, and Plaintiff filed her Motion [#62] twenty-eight days thereafter on April 27, 2018. Accordingly, Plaintiff's Motion is timely pursuant to Rule 59(e). Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

motion will be considered under Rule 59(e) when it involves reconsideration of matters properly encompassed in a decision on the merits." (quotations omitted)).

"'Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact, and enables the court to correct its own errors and thus avoid unnecessary appellate procedures.'" *Etherton v. Owners Ins. Co.*, No. 10-cv-00892-PAB-KLM, 2013 WL 5443068, at *1 (D. Colo. Sept. 30, 2013), *aff'd*, 829 F.3d 1209 (10th Cir. 2016) (quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)). "Grounds for granting a Rule 59(e) motion include '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)); *see also Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (Rule 59(e) relief is appropriate where "the court has misapprehended the facts, a party's position, or the controlling law."). "Clear error is '(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Etherton*, 2013 WL 5443068, at *1 (quoting *United States v. Farr*, 701 F.3d 1274, 1286 (10th Cir. 2012)). "An error is 'manifest' if it is 'plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *Id.* (quoting Black's Law Dictionary 582 (8th ed. 2004)).

However, "[Rule 59(e)] 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of

judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting Wright & Miller, *Federal Practice and Procedure* § 2810.1, 127-28 (2d ed. 1995)).  Additionally, "Rule 59 'does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" *Etherton*, 2013 WL 5443068, at *2 (quoting *Moro*, 91 F.3d at 876); *see also Servants of Paraclete*, 204 F.3d at 1012 (Filing a motion pursuant to Rule 59 is not appropriate "to revisit issues already addressed or advance arguments that could have been raised in prior briefing.").  Ultimately, "[t]he decision to grant or deny a Rule 59 motion is committed to the Court's discretion."  *Id.* (citing *Phelps*, 122 F.3d at 1324).

## IV.  Analysis

As an initial matter, Plaintiff-Intervenor argues that the Motion [#62] should be summarily denied because it seeks to introduce new evidence into the record and assert new arguments that could have been, but were not, presented to the Court during the months of litigation preceding the entry of the Final Order [#58] and Final Judgment [#59].  *Response* [#70] at 2, 5-7.  The Court agrees with Plaintiff-Intervenor to an extent, as discussed in Sections B and C of this Order, with respect to two of the three modifications of the Final Order sought by Plaintiff.  However, as to Plaintiff's procedural objections to specific language found in the Final Order and Final Judgment, the Court finds that consideration of these objections is appropriate given that they are not based on arguments that could have been previously raised.  With this understanding, the Court

proceeds to address the three modifications to the Final Order and Final Judgment that Plaintiff seeks in the Motion.

**A. Whether the Final Judgment must be vacated and whether the Final Order must be amended to clarify that it is not a "Final" Order.**

Plaintiff contends that the Final Judgment [#59] must be vacated and that the Court's Final Order [#58] must be amended to reflect that it is not in fact a "final" order. *Motion* [#62] at 3-7. First, Plaintiff argues that the Final Order [#58] does not resolve all claims among all parties and therefore is not a "final judgment" pursuant to Fed. R. Civ. P. 54(b). *Id.* at 4. Second, Plaintiff advises the Court for the first time that the settlement agreement reached with Defendant General Motors (the "GM Settlement") requires, among other things, that a stipulation of dismissal be filed in this matter before the funds can be disbursed by the Settlement Administrator. *Id.* at 6. Therefore, according to Plaintiff, the Final Order [#58] "made a legal error in sua sponte ending this entire case" and "must be amended to: delete the words 'Final' and 'Judgment' from the title of the order; delete the instruction on the last page of the order that 'judgment shall enter accordingly'; and delete the last page's direction to the clerk 'to close this case.'" *Id.* at 5-6. Additionally, Plaintiff states that the Court must vacate the Clerk of the Court's Final Judgment [#59]. *Id.* at 6.

**1. Vacating the Final Judgment**

First addressing Plaintiff's argument that the Final Judgment [#59] must be vacated, Rule 54 defines "judgment" as "any order from which an appeal lies," Fed. R. Civ. P. 54(a), and further states:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one

or more, but fewer than all, claims or parties only if the court expressly
determines that there is no just reason for delay. Otherwise, any order or
other decision, however designated, that adjudicates fewer than all the
claims or the rights and liabilities of fewer than all the parties does not end
the action as to any of the claims or parties and may be revised at any time
before the entry of a judgment adjudicating all the claims and all the parties'
rights and liabilities.

Fed. R. Civ. P. 54(b). The Court's Final Order [#58] neither invoked Rule 54(b) nor

expressly determined that there was no just reason for delay. However, based on the

allocation determination, the Court ordered that "judgment shall enter accordingly" and

directed the Clerk of the Court to close this case. *Final Order* [#58] at 14. Following the

Final Order, the Clerk of the Court entered the Final Judgment which ordered, among

other things, "that final judgment is hereby entered in favor of Plaintiff, Jamie Lee Dowling,

Plaintiff-Intervenor, Shawn Cook and against Defendants, General Motors, Key Safety

Systems, Inc." [#59] at 1. As stated above, the Final Judgment further ordered that "the

plaintiff and intervenor may have their costs by filing a bill of costs within 14 days of entry

of judgment." *Id.* at 2.

Plaintiff's point that the Final Order "did not adjudicate the rights and liabilities of

Defendants in this case" is well-taken. *See Motion* [#62] at 5. While it is true, as Plaintiff-

Intervenor argues, that the only issue for adjudication before the Court was the

percentage allocation of the settlement proceeds between the two parents, the entirety of

the Court's role in this matter is broader. *Response* [#70] at 15. Although the Court

resolved the issue of allocation of the proceeds between Plaintiff and Plaintiff-Intervenor,

the issue of the rights and liabilities between Plaintiff and Defendants was apparently not

fully resolved at the time the Court issued its Final Order. Notably, the Suggestion of

Remand [#8-1] filed by the Southern District of New York states:

The parties have agreed that it would be appropriate to remand the case *in its entirety* for the purpose of allowing the transferor court (in this case, the United States District Court for the District of Colorado) to oversee approval of the settlement and distribution of the settlement in accordance with Colorado's wrongful death statute.

(emphasis added). Plaintiff-Intervenor asserts that "the only logical interpretation of the Final Order and Judgment as applicable to the Defendants is that the Defendants must abide by the Court's allocation determination, which they have already agreed to do in the GM Settlement." *Response* [#70] at 16 n.4. While the Court agrees with this interpretation to the extent that it applies to the <u>Final Order</u>, it remains true that Plaintiff's claims against Defendants were not, and have not been, adjudicated on the merits. Thus, the Court finds that it was a clerical error for the <u>Final Judgment</u> to state that judgment had been entered in favor of Plaintiff and Plaintiff-Intervenor against Defendants.

However, given that the claims against Defendants have now been dismissed and are no longer pending, *see Minute Order* [#81], the Court finds that it need not vacate the Final Judgment in its entirety. Rather, to simply reflect the fact that all claims in the case have been resolved and correct the clerical error regarding entry of judgment against Defendants, the Court directs the Clerk of the Court to enter an Amended Final Judgment which deletes the following language from the Final Judgment [#59]:

It is FURTHER ORDERED that final judgment is hereby entered in favor of Plaintiff, Jamie Lee Dowling, Plaintiff-Intervenor, Shawn Cook and against Defendants, General Motors, Key Safety Systems, Inc.

It is FURTHER ORDERED that pursuant to Fed. R. Civ. P. 54(d)(1) and the procedures set forth in D.C.COLO.LCivR 54.1, the plaintiff and intervenor may have their costs by filing a bill of costs within 14 days of entry of judgment.

Accordingly, the Motion [#62] is **granted** to the extent that Plaintiff asks the Court to amend the Final Judgment [#59].[5]

### 2.      Amending the Final Order

To the extent that Plaintiff argues that the Final Order [#58] must be amended "to be 'un-finaled' to allow this case to be finished," the Court disagrees. *Motion* [#62] at 5. While the Court acknowledges that the Final Order [#58] did not address the claims against Defendants, the text of the Final Order already makes this abundantly clear. The Final Order makes no reference to Defendants or the claims against them, and explicitly addresses the limited issue of settlement allocation between Plaintiff and Plaintiff-Intervenor. Thus, although the Final Order states that "judgment shall enter accordingly," it is obvious that the judgment to be entered related only to the settlement allocation dispute between Plaintiff and Plaintiff-Intervenor.

Moreover, the Court fails to see why the terms "Final" and/or "Judgment" must necessarily be deleted from the Final Order. Again, as is clear from its context, the Final Order was a "Final Order and Judgment" only insofar as it resolved the only dispute before the Court, i.e., the allocation of settlement proceeds between Plaintiff and Plaintiff-

---

[5]  Plaintiff makes an ancillary argument that the Final Judgment [#59] "against Defendant should be withdrawn because it is inconsistent with the settlement agreement, which provides for resolution of the case against Defendants by dismissal, not judgment." *Motion* [#62] at 6. Specifically, Plaintiff contends that the GM Settlement requires "a document in compliance with the appropriate statutory, common law, or court requirements dismissing with prejudice any pending lawsuit against" Defendants. *Id.* at 6 (citation, internal quotation marks, emphasis omitted). The Court first notes that this purported requirement of the GM Settlement was not brought to the attention of the Court prior to entry of the Final Judgment. Moreover, given that the claims against Defendants have now been dismissed and the Court amends the Final Judgment [#59] to clarify that judgment was not entered against Defendants, the Court finds this ancillary argument moot.

Intervenor.  As to the appealability concerns raised by Plaintiff, *see id.* at 4-5, the Court recognizes that, pursuant to U.S.C. 28 § 1291, the Tenth Circuit has "jurisdiction only over 'final' decisions of the district court—that is, those decisions that 'leave nothing for the [district] court to do but execute the judgment.'"  *Albright v. UNUM Life Ins. Co. of Am.*, 59 F.3d 1089, 1092 (10th Cir. 1995) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)) (brackets omitted).  However, as the case cited by Plaintiff further notes, the "'label used to describe the judicial demand is not controlling'" when the Tenth Circuit considers "whether the judgment constitutes a 'final decision' under § 1291[.]"  *Id.* (quoting *United Bonding Ins. Co. v. Stein*, 410 F.2d 483, 486 (3d Cir.1969) (per curiam), *overruled on other grounds, Cohen v. Bd. of Trustees of the University of Med. and Dentistry*, 867 F.2d 1455, 1467 (3d Cir. 1989)).

While it *may* be true that the Court's Final Order [#58] was not appealable at the time it was entered, as Plaintiff contends, given the status of Plaintiff's claims against Defendants and given that the Court did not invoke Rule 54(b) in the Final Order, that is no longer the case.  The claims against Defendants have now been dismissed pursuant to the parties' Stipulation [#79] and, on the Court's entry of this Order and concurrent adjudication of Plaintiff-Intervenor's Fee Motion [#67], there remains nothing left for the Court "to do but execute the [amended] judgment."  *Albright*, 59 F.3d at 1092.  Moreover, disposition of Plaintiff's present Motion restarts the parties' time for filing a notice of appeal.  *See* Fed. R. App. Proc. 4(a)(4)(A)(iv).  Accordingly, the Motion [#62] is **denied** to the extent that Plaintiff asks the Court to amend the Final Order [#58] to clarify that it is not in fact a "Final Order".

**B.      Whether the Final Order must be amended to clarify that allocation is net of costs imposed by Orders in the MDL and the GM Settlement.**

Plaintiff next argues that the Final Order [#58] must be amended to clarify that it "does not preclude deduction from each beneficiary's share of the gross settlement proceeds as may be required by the Orders of the MDL Court or by the settlement agreement." *Motion* [#62] at 16. According to Plaintiff, "[c]ertain deductions from the gross settlement amount are required to be made before any Plaintiff (or Plaintiff Intervenor) can obtain settlement funds, pursuant to Orders in the MDL proceeding and provisions of the Agreement-Release." *Motion* [#62] at 7. Specifically, Plaintiff states that the required deductions account for MDL attorney fees, MDL costs, settlement costs, and lien administrator fees. *Id.* at 7-8.

As an initial matter, to the extent that Plaintiff asks the Court to adjudicate the parties' compliance with Orders of the MDL Court at this stage, this issue was never presented to the Court with respect to the Motion to Allocate [#19]. *See Servants of Paraclete*, 204 F.3d at 1012. Indeed, as Plaintiff-Intervenor notes, compliance with Orders of the MDL Court appears to have not been an issue for Plaintiff when she sought allocation of all settlement proceeds with respect to her daughter, Raylee. *See Response* [#70] at 16; *Plaintiff's Unopposed Motion to Approve Allocation of Settlement Proceeds Re: Raylee Kay Dowling, Deceased* [#16]. Moreover, Plaintiff's Motion cites no authority "requiring an amendment to the Final Order [#58] in order for the parties to comply with the GM Settlement and MDL Orders." *Response* [#70] at 16.

Regardless, Plaintiff's contention on this point is moot given that Plaintiff-Intervenor does not object to paying his 35% portion of the MDL costs and agrees to stipulate to

those deductions required by the MDL Orders and GM Settlement.[6]  *Response* [#70] at 16-17.  Additionally, the Court agrees with Plaintiff-Intervenor that nothing in the Final Order [#58] precludes or prevents the parties from satisfying their obligations under any MDL Order or the GM Settlement.  Thus, the Court finds no reason for amending the Final Order [#58] on these grounds.  Accordingly, the Motion [#62] is **denied** to the extent that Plaintiff asks the Court to amend the Final Order to clarify that it does not preclude certain deductions from the parties' allocation as may be required by Orders of the MDL Court or by the GM Settlement.

**C.     Whether the Final Order should be amended to clarify that the allocation is based on net settlement proceeds after pro rata payment to Plaintiff's counsel of their fees and costs under the common fund doctrine.**

The majority of Plaintiff's Motion concerns the amount of attorney's fees to which Plaintiff's counsel believe they are entitled.  *See* [#62] at 8-19.  Specifically, Plaintiff's counsel argue that they should be paid based on the gross settlement amount pursuant to the "common fund doctrine," which provides that attorneys should be paid "'out of the monetary fund that the litigation has produced.'"  *Id.* at 9 (quoting *Kuhn v. State*, 924 P.2d 1053, 1057 (Colo. 1996)).  Plaintiff's counsel argues that they are entitled to the fees on the gross settlement amount because the funds were obtained solely through their efforts, as Plaintiff-Intervenor did not intervene until the GM Settlement was reached and the case was remanded from the MDL for allocation of settlement funds.  *Id.* at 8-14.

In certain circumstances, Colorado courts have applied the common fund doctrine as a common law form of equitable relief that provides fees to attorneys who advocate

---

[6]  The Court does not include the amounts here in order to protect the confidentiality of the settlement amount.

for the benefit of others.  *Hawes v. Colorado Div. of Ins.*, 65 P.3d 1008, 1015 (Colo. 2003).

The rationale behind the doctrine is that all parties who benefit from the creation of the

common fund should share the fees in order to avoid unjust enrichment of passive

beneficiaries.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  "The common fund

doctrine applies when a plaintiff, either as an individual or a class representative, creates,

increases, or preserves a monetary fund for the benefit of an ascertainable class of

persons similarly situated."  *Kuhn*, 924 P.2d at 1058.  The Colorado Supreme Court has

set forth two requirements for the common fund doctrine to apply: "(1) that all beneficiaries

are similarly situated; and (2) that but for the plaintiff's actions, the beneficiaries would

have been forced to institute the litigation themselves in order to achieve any benefit."

*Trevino v. HHL Fin. Servs., Inc.*, 945 P.2d 1345, 1347 (Colo. 1997), *as modified on denial*

*of reh'g* (Oct. 20, 1997).

As an initial matter, the Court agrees with Plaintiff-Intervenor that the arguments

raised in the Motion [#62] regarding the common fund doctrine are clearly an attempt to

relitigate an issue which the Court has already adjudicated, i.e., whether the Court was

required to allocate net settlement proceeds, after payment of Plaintiff's attorneys' fees

and costs.  *See Final Order* [#58] at 13-14.  Therefore, in order for the Court to reconsider

this issue and grant the relief Plaintiff's counsel now seeks, the Motion must indicate either

(1) an intervening change in the controlling law, (2) new evidence previously unavailable,

or (3) the need to correct clear error or prevent manifest injustice.  *Somerlott*, 686 F.3d at

1153 (quotation marks and citations omitted).  Otherwise, the Court must deny the Motion

to the extent that Plaintiff's counsel simply seeks "to relitigate old matters, or [ ] raise

arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co.*, 554 U.S. at 485 n.5 (citation omitted).

After a careful review of the proceedings in this matter and the arguments and evidence presented in Plaintiff's Motion [#62], the Court finds that none of the three grounds for granting a motion pursuant to Rule 59(e) have been demonstrated. Rather, the Court concurs with Plaintiff-Intervenor that the arguments asserted in the Motion rely on new evidence and raise new issues "that were not presented to the Court during the months of litigation leading up to the entry of the" Final Order [#58]. *Response* [#70] at 2. It is further apparent from the proceedings summarized below that Plaintiff's counsel could have, but did not, raise such evidence and arguments prior to the Court's Final Order. Thus, for the reasons more fully discussed below, the Court finds no basis under Rule 59(e) for considering Plaintiff's counsel's new contention that the Court must apply the common fund doctrine to award them fees from Plaintiff-Intervenor's settlement allocation.

### 1.     Summary of Proceedings

Plaintiff's Motion to Allocate [#19] initiated the dispute over the allocation of settlement proceeds with respect to her son. In the Motion to Allocate, Plaintiff stated without citing any legal authority or evidence:

> Plaintiffs [sic] also request an Order approving payment of the attorney fees on the amount of the recovery of wrongful death proceeds and of litigation costs to plaintiffs' [sic] counsel. Pursuant to the Colorado wrongful death act, Ms. Dowling was a proper plaintiff authorized to bring this action for the benefit of all claimants, and to contract with counsel for representation. Plaintiffs [sic] seek an Order allowing payment of attorney fees on the total amount of recovery per the terms of the fee agreement. The allocation

hearing should be scheduled to determine allocation of the net proceeds, after payment of fees and costs.

[#19] at 2.

In support of the Motion to Allocate, Plaintiff attached a Memorandum [#19-1]. Plaintiff's Memorandum was almost entirely devoted to arguments and evidence as to why "[t]he Court should allocate 100% of the proceeds to [Plaintiff] and 0% to [Plaintiff-Intervenor]," without making any distinction between net and gross settlement proceeds. [#19-1] at 15; *see also id.* at 1-14 ("[T]he court should allocate 100% of the wrongful death proceeds to the parent that provided and took responsibility for 100% of Landyn's care an [sic] support, and 0% to the absent father who abandoned his son, took 0% responsibility, and provided 0% of Landyn's care and support."). In a footnote, Plaintiff explained that "the settlement amount is strictly confidential" and that this amount need not and should not be disclosed to Plaintiff-Intervenor. *Id.* at 13 n.2.

Plaintiff's only argument in the Memorandum as to why the distribution should be based on net proceeds, after deduction of attorneys' fees, was as follows:

> The person who brings the action under the authority of the Wrongful Death Act is permitted to contract for representation in such an action, and it is the net proceeds, after deduction of attorney's fees and costs in obtaining the recovery, that are available for distribution in accordance with the Act. *Clint v. Stolworthy*, 357 P.2d 649, 650 (Colo. 1960).

*Id.* at 14. Finally, Plaintiff attached twelve exhibits to her Motion to Allocate [#19], all of which pertained to Plaintiff's arguments regarding the percentage allocation of settlement proceeds. While the GM Settlement was not included for confidentiality reasons, none of the exhibits contained any information whatsoever regarding Plaintiff's fee agreement

with counsel, fees incurred as a result of the GM Settlement, or the difference between net and gross settlement proceeds.

On October 16, 2017, Plaintiff filed her Reply [#32] in further support of the Motion to Allocate [#19]. There, Plaintiff stated the following with respect to attorneys' fees: "[t]he Cook brief does not contest that the issue presented is the allocation of the net settlement proceeds after deduction of attorney's [sic] fees and costs." *Reply* [#32] at 7. Plaintiff's Reply [#32] contained no other argument and presented no additional evidence on the issue.

The evidentiary hearing on Plaintiff's Motion to Allocate [#19] began on January 9, 2018. At the start of the hearing, the Court noted that Plaintiff had not disclosed the amount at issue to Plaintiff-Intervenor based on the parties' briefing, and asked counsel if that information had since been disclosed. *Tr. of January 9, 2018 Hearing* [#56] at 6:4-8. Plaintiff's counsel stated that the amount had since been disclosed and then handed the Court a document that purported to show the gross and net amounts of the settlement.[7] *Id.* at 6:9-7:1; *see Pl.'s Ex. 6* [#62-6]. This document, however, was never admitted into evidence and contained no calculation or further explanation regarding attorneys' fees or costs. Notably, this was the first time the Court had any information whatsoever about the gross and net amounts of the settlement proceeds. Yet, there was

_____

[7] Although the transcript indicates otherwise, the audio recording of the hearing confirms that Plaintiff's counsel, rather than Plaintiff-Intervenor's counsel, made this statement in response to the Court's inquiry and provided this document to the Court. Plaintiff notes this transcription error in her Motion [#62] at 16 n.14.

no further discussion regarding attorneys' fees or the distinction between gross and net amounts at that time.

During his opening statement, Plaintiff's counsel made no mention of net versus gross proceeds or attorneys' fees. *Id.* at 13:5-17:4. Moreover, there was no evidence presented during the two-day hearing regarding this issue, apart from the document tendered by Plaintiff's counsel at the beginning of the hearing that showed the gross and net settlement amounts. At the conclusion of the proceedings, the Court specifically went over the exhibits that had been admitted and asked counsel if they wished to tender any additional exhibits for admission into the record, and they declined to do so. *Tr. of January 10, 2018 Hearing* [#57] at 68:11-69:5. Neither party made any mention of allocating only net proceeds in their closing statements and Plaintiff's counsel made no argument relating to net proceeds or attorneys' fees in his rebuttal closing. *Id.* at 69:10-94:19.

However, just as the Court was about to conclude the hearing, Plaintiff's counsel raised the issue of the gross versus net difference. *Id.* at 95:3-96:15. He stated that he thought both parties had "agreed in writing that the net amount is the amount at issue." *Id.* at 95:16-14. The Court asked him for further explanation, and counsel stated that the attorneys' fees were "for obtaining the funds that we're now dividing." *Id.* at 96:8-9. Plaintiff's counsel then reasserted that the parties "had agreed" to that amount. *Id.* at 96:15. However, when the Court asked counsel for Plaintiff-Intervenor if that was correct, he stated:

> Your Honor, we -- at this point in time, we haven't seen any fee agreement. We haven't seen any, you know, itemization of the time spent to achieve that award. All we know is that's what they're claiming the net amount is.

> We don't know what the total costs they incurred were. That is their representation of what the net amount is.

*Id.* at 96:18-24. In response, the Court stated that Plaintiff-Intervenor's counsel had an affirmative obligation to contradict the amount of fees presented by Plaintiff with evidence, but that he had not done so. *Id.* at 96:25-97:3. The Court then stated:

> So what I have to go on is what I have in front of me. What I have in front of me is a written statement that says that the amount at issue is the amount at issue after attorneys' fees.
>
> I can't speculate that this is not the correct amount in the absence of any evidence to that fact. So that's the number that I'm going to go with.

*Id.* at 97:4-10. However, the Court made no ruling with regard to the foundational issue of whether attorneys' fees should be deducted from the gross settlement proceeds before allocation. The Court took the Motion to Allocate [#19] under advisement and concluded the hearing. *Id.* at 94:20-23, 97:11-13.

As it relates to the instant Motion [#62], the Court makes two observations with respect to the record prior to the Court's Final Order [#58] as it pertained to the issue of Plaintiff's attorneys' fees and net versus gross settlement proceeds.

First, although the Court understood that Plaintiff was seeking an allocation of net proceeds, the Court could not conclude that Plaintiff-Intervenor had so agreed based on the record at that time. Plaintiff's Reply in support of the Motion to Allocate [#19] simply assumed (in one sentence) that this issue was no longer in contention given that Plaintiff-Intervenor's brief in response was silent on whether the allocation should be based on net settlement proceeds, after deduction of attorneys' fees and costs. *Reply* [#32] at 7. However, much like Plaintiff's Memorandum [#19-1], Plaintiff-Intervenor's Response focused on the issue of percentage allocation and did not differentiate between net and

- 20 -

gross settlement proceeds. *See generally* [#26]. In fact, by contending that "a 100% allocation to Ms. Dowling should be denied," [#26] at 2, the most reasonable inference was that Plaintiff-Intervenor was speaking to allocation of the gross proceeds, not net proceeds. *See also id.* at 23 (Plaintiff-Intervenor requesting that the Court "allocate the settlement proceeds resulting from the death of Landyn between Mr. Cook and Ms. Dowling, in an amount not less than 50% to Mr. Cook[.]"). Thus, the Court could not simply construe these statements as Plaintiff-Intervenor's concession that the Court should only allocate net proceeds.

As to Plaintiff's counsel's assertion in the waning minutes of the two-day hearing that both parties had agreed that the net amount was the amount at issue, the statement by Plaintiff-Intervenor's counsel in response hardly conveyed such an agreement. According to Plaintiff-Intervenor's counsel, Plaintiff had simply disclosed an amount representing the net settlement proceeds without an itemization of attorneys' fees and costs. To the extent that Plaintiff believed the parties had reached such an agreement, her counsel could have sought a stipulation to that effect but did not. Moreover, given that this issue was raised at the conclusion of the hearing with limited discussion, Plaintiff's counsel could have sought leave to brief the issue after the hearing but did not. Thus, based on the record before it, the Court could not conclude that Plaintiff-Intervenor had agreed to a net settlement allocation which deducted Plaintiff's attorneys' fees.

Second, regardless of whether the parties had *agreed* to deduct fees and allocate only net proceeds, the Court had to determine whether the *law* permitted the deduction. Given that the issue was not meaningfully raised during the evidentiary hearing, the Court

had to rely solely on the parties' briefing to determine the issue. Plaintiff's briefing, however, was not informative on this issue and largely ignored any distinction between net and gross settlement proceeds. Plaintiff's Motion requested that the Court "approv[e] payment of the attorney fees on the amount of the recovery of wrongful death proceeds and of litigation costs to plaintiffs' [sic] counsel" and stated in conclusory fashion that the Court needed to "determine allocation of the net proceeds, after payment of fees and costs." [#19] at 2. Plaintiff's Memorandum cited only one case in support of this request and made no mention of the common fund doctrine. [#19-1] at 14 (citing *Stolworthy*, 357 P.2d at 650). Her Reply [#32] in further support, as stated above, merely presumed that Plaintiff-Intervenor had waived the issue. Finally, Plaintiff's counsel did not attach a single exhibit to Plaintiff's briefing and did not seek to admit any evidence during the hearing regarding this issue. While Plaintiff's counsel handed the Court a document purporting to show the net and gross settlement amounts that Plaintiff-Intervenor had clearly not stipulated to, counsel did not seek to admit this document into evidence.[8]

Based on the foregoing, the Court was left to determine whether it should allocate the net settlement proceeds, after payment of attorneys' fees and costs, based on the single case cited in Plaintiff's Memorandum [#19-1]. The Court found that this case, *Stolworthy*, 357 P.2d 649, did "not stand for the proposition that the Court must only allocate the net proceeds available after payment of fees and expenses[.]" *Final Order*

---

[8] Contrary to Plaintiff's argument, *see Motion* [#62] at 17, the Court's statement that this is "the number that I'm going with" was not a ruling on the issue of whether the allocation *must* be of net proceeds, after deduction of attorneys' fees and costs. *Tr. of January 10, 2018 Hearing* [#57] at 96:25-97:1-10. It was simply an acknowledgment that the Court would accept Plaintiff's representation that the net proceeds dollar amount was as it appeared on the document.

[#58] at 13.  Additionally, the Court stated that it had not located any other legal authority, in the Colorado Wrongful Death statute or elsewhere, which dictated this particular outcome.  *Id.*  The Court further noted that Plaintiff's request appeared "to be based on a private fee agreement between herself and her counsel" but that the "terms of the fee agreement [were] not before the Court, nor [was] any dispute relating to it."  *Id.* at 13-14.  Thus, the Court denied Plaintiff's request that the allocation be based on net settlement proceeds after deduction for attorneys' fees and costs, and concluded that an allocation of gross proceeds was appropriate.  *Id.* at 14.  The instant Motion [#62] followed.

## 2.    Plaintiff's Motion

As is evident from the above summary, the issue of whether Plaintiff's counsel were entitled to fees from the settlement proceeds was clearly before the Court prior to entry of the Final Order.  Moreover, Plaintiff's counsel had at least three opportunities to address the issue in the Motion to Allocate [#19], Reply [#32], and during the two-day hearing.  Despite these opportunities, Plaintiff's counsel failed to offer well-developed arguments, adequate legal authority, or admissible evidence to demonstrate why the Court was required to allocate net settlement proceeds after deducting their fees and costs.  Faced with an unfavorable ruling, it is apparent to the Court that Plaintiff's counsel now seek to remedy their previous failures by relying on the common fund doctrine and new evidence to relitigate the issue.  However, while this doctrine and new evidence may have been persuasive if offered while Plaintiff's Motion to Allocate was still pending, their use at this stage contravenes the purpose of Rule 59(e) and must therefore be rejected.  *Exxon Shipping Co.*, 554 U.S. at 485 n.5 (citation omitted).

It is undisputed that the common fund doctrine is a legal theory that was never mentioned in Plaintiff's prior briefing or by Plaintiff's counsel during the hearing. *See* [#62] at 8-14. Plaintiff's counsel provide no adequate explanation as to why this theory was not raised previously. Therefore, their reliance on the doctrine now amounts to nothing more than making a legal argument that could have been raised before in order to get a "second bite at the apple." *Stauffer v. Blair*, No. 12-cv-01702-WYD-MJW, 2013 WL 941442, at *1 (D. Colo. Mar. 11, 2013) (quoting *Mantle Ranches, Inc. v. U.S. Park Serv.*, 950 F. Supp. 299, 300 (D. Colo. 1997)); *see Meyers Warehouse, Inc.*, 2014 WL 5113323, at *3 (finding a claim for attorney's fees pursuant to the common fund doctrine inappropriately raised under Rule 59(e) where the theory had not been raised before the court "in any form in any prior filing").

Plaintiff further avers that amending the allocation is appropriate under the common fund doctrine because Plaintiff-Intervenor either waived any objection to an allocation of the net settlement amount or agreed to this allocation prior to the hearing. *Id.* at 14-18. This argument, however, is impermissible under Rule 59(e) in two respects. First, the argument is premised on issues Plaintiff's counsel already raised in Plaintiff's prior Reply [#32] and during the hearing. *Servants of Paraclete*, 204 F.3d at 1012 (stating Rule 59(e) is "not appropriate to revisit issues already addressed"); *Sayed v. Broman,* 2014 WL 3862635, at *2 (D. Colo. Aug. 6, 2014) ("A Rule 59(e) motion is not a new opportunity to revisit issues already addressed or to advance arguments that could have been raised previously."). Second, Plaintiff's counsel supports this argument in the Motion [#62] with new evidence that was available before the hearing but was not

offered.[9]  *Etherton*, 2013 WL 5443068, at *2 ("Rule 59 . . . certainly does not allow a party to introduce new evidence . . . that could and should have been presented to the district court prior to the judgment." (quotation marks and citation omitted)).

Finally, Plaintiff contends that her attorneys' fees are reasonable "[b]ased on the accounting and documentation" attached to the Motion which were never provided to the Court previously.  *Motion* [#62] at 18-19.  This documentation includes Plaintiff's fee agreement and an itemization of costs allocable to Landyn's claim, which were never produced until now.  This is despite the fact that they were directly implicated at the end of the hearing by Plaintiff-Intervenor's objection to Plaintiff's characterization that the parties had "agreed" to allocate the net settlement amount.  *Tr. of January 10, 2018 Hearing* [#57] at 96:18-22 (Plaintiff-Intervenor's counsel stating: "at this point in time, we haven't seen any fee agreement.  We haven't seen any, you know, itemization of the time spent to achieve that award.  All we know is that's what they're claiming the net amount

---

[9] Aside from the facts that no evidence regarding this "agreement" was ever presented to the Court prior to entry of the Final Order [#58] and that the only real mention of the parties' so-called agreement came in the final minutes of the hearing, Plaintiff's reliance on the December 27, 2017 letter from Plaintiff-Intervenor's counsel to Plaintiff's counsel, [#62-5], is not persuasive for at least two reasons.  First, the letter is clearly a settlement demand, and hence inadmissible into evidence under Fed. R. Evid. 408(a), which precludes using such a document to "prove or disprove the validity or amount of a disputed claim."  By attaching this letter to her Motion [#62], Plaintiff is attempting to use it to prove the "validity" of the net amount of the disputed claim, a purpose which is expressly forbidden by the Rule.  Second, even assuming that the letter is somehow admissible, the Court concurs with Plaintiff-Intervenor that the content of the letter does not lead to the conclusion that Plaintiff-Intervenor agreed to dispute only the net proceeds. *Response* [#70] at 6.  To construe Plaintiff-Intervenor's counsel's statement in the letter that "if this matter proceeds to [a] hearing, Mr. Cook will seek to recover 50% of the net recovery amount" as an agreement that only the net proceeds were at issue is a stretch, especially in light of the letter's demand for more information about how the fees were incurred and the November 8, 2017 email from Plaintiff-Intervenor's counsel, *Pl.-Intervenor's Ex. 1* [#70-1], expressly declining to stipulate to a net amount.  Like the remainder of the letter, that statement is best characterized as a mere negotiating position.

is."). Plaintiff also attaches a revised version of the document Plaintiff's counsel handed the Court during the hearing which, notably, provides a different and more detailed calculation of the net settlement amount.

Plaintiff's attorneys argue, without citing any legal authority, that they "should not be found to lose the right to recover their fees and advanced costs due to any arguable delay in presenting the details of the issue, where they reasonably believed the issue to be uncontested." *Motion* [#62] at 14. However, as stated above, "Rule 59 'does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" *Etherton*, 2013 WL 5443068, at *2 (quoting *Moro*, 91 F.3d at 876). Plaintiff's attorneys fail to adequately explain why the arguments and evidence they rely on in the Motion [#62] could not have been offered to the Court previously other than to reassert their prior belief that that their entitlement to fees was a non-issue. In her Reply, Plaintiff argues:

> [I]t is appropriate for this Court to consider Plaintiff's Common Fund law [sic] because, although Plaintiff stated in both her brief and at the hearing that attorneys' fees and costs related to settlement made with GM should come out of the gross settlement proceeds, Plaintiff never had to go further because Cook never disputed that the parties' allotment of the settlement would be made after attorneys' fees and costs were taken off of the gross settlement, and so agreed in writing.

> Since Cook had expressly not disputed this approach, it was not fully litigated. Because Cook never disputed the issue, neither party briefed it, and the Court did not have the benefit of the underlying law supporting Plaintiff's argument when it entered the March 30th Order. Plaintiff's discussion of the applicable law is appropriate even if Rule 59(e) applies because the Court's March 30th Order may have misapprehended the Plaintiff's position and the controlling law supporting it since no real dispute was before the Court on this issue and it was thus not briefed by either side.

[#74] at 5.  Plaintiff cites no legal authority for this argument other than stating the general principle that "'a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.'"  *Id.* at 5 (quoting *Servants of Paraclete*, 204 F.3d at 1012).

However, it is unclear how the Court could have misapprehended Plaintiff's position on whether the common fund doctrine should apply given that it was not raised at any point prior to entry of the Final Order [#58].  Rather, as demonstrated by the proceedings summarized above, any misapprehension of a party's position appears to have been on the part of Plaintiff and not the Court.  Simply stated, Plaintiff's counsel erred by assuming that Plaintiff-Intervenor had either waived any objection, or agreed, to allocate net proceeds without providing an enforceable stipulation *or* any evidence to that effect, and by failing to provide applicable legal authority for Plaintiff's contention that the Court should allocate net proceeds instead of gross proceeds.  Based on the parties' statements at the conclusion of the hearing and the arguments Plaintiff's attorneys now assert, it is clear that the issue of Plaintiff's attorneys' fees was an issue lurking in the background between the parties outside the Court's view throughout these proceedings. Nevertheless, despite the lack of any stipulation on the record, Plaintiff's counsel never brought the issue to the Court's attention and simply assumed that the Court would rule in their favor on the basis of waiver of a claim to gross proceeds by Plaintiff-Intervenor. This mistake cannot be attributed to the Court, however.  The Court fails to perceive any clear error in the Final Order, based on the evidence in the record at that time, that affects Plaintiff's substantial rights and which seriously affects the fairness of these proceedings.

*Etherton*, 2013 WL 5443068, at *1 (quoting *United States v. Farr*, 701 F.3d 1274, 1286 (10th Cir. 2012)).  Thus, the Court finds no basis under Rule 59(e) for considering Plaintiff's newly-raised contention that the Court must apply the common fund doctrine to award Plaintiff attorneys' fees from Plaintiff-Intervenor's settlement allocation.  *Sayed,* 2014 WL 3862635, at *2.

Moreover, assuming *arguendo* that Plaintiff's argument regarding the common fund doctrine is properly raised under Rule 59(e), it is not clear that the doctrine applies in this instance.  Although it may be equitable to require those who benefit from a common fund to share in the costs of obtaining such a fund, the equities are less compelling when one of those sharing the fund had no knowledge of creation of the fund nor any opportunity to participate in its creation.  *Aff. of Pl.-Intervenor Cook* [#70-2] (Plaintiff-Intervenor attesting to having no knowledge of the underlying litigation, including the GM Settlement, until he received correspondence from Plaintiff's counsel on or about November 11, 2016, after conclusion of the GM Settlement); *see Trevino*, 945 P.2d at 1349 (suggesting that application of the common fund doctrine is limited "to cases in which a party actually had a right to intervene in the litigation producing a fund and elected not to do so on an active basis").  The Court fails to see the equity in requiring a party like Plaintiff-Intervenor, who was not informed of the GM lawsuit and remained entirely unrepresented in that action, to pay fees to Plaintiff's counsel under the common fund doctrine, when those efforts had little to do with protecting his interests and those attorneys were subsequently adverse to him.  *See In re Estate of Kay*, 792 S.E.2d 907, 916 (S.C. Ct. App. 2016), *aff'd in part, rev'd in part on other grounds*, 816 S.E.2d 542

(S.C. 2018) ("Although the attorney's services might have benefitted all parties, fees cannot be awarded when the interests of the parties are adverse."); *Domenella v. Domenella*, 513 N.E.2d 17, 20 (Ill. App. Ct. 1987) (finding attorney was not entitled to fees from respondents under common fund doctrine where "he failed to identify respondents or join them in the probate proceedings, he did not disclose their interests to the court, and he performed no services to advance or protect their interests"; "The common fund doctrine is not applicable here because the plaintiff sought to preserve his own interest and only coincidentally benefitted others.").    Finally, Plaintiff-Intervenor notes that the MDL created a "Common Benefit Fund" to which Plaintiff-Intervenor agrees to contribute and out of which Plaintiff's counsel is already being paid.  *Response* [#70] at 13.  While Plaintiff's attorneys contend that they, personally, will only obtain a small portion of this fund, they fail to adequately address Plaintiff-Intervenor's larger point that it would be inequitable to require Plaintiff-Intervenor to pay his portion of his gross recovery to the Common Benefit Fund, plus pay for his own counsel who helped obtain his portion of the gross settlement proceeds, and, in addition, pay Plaintiff's counsel under the common fund doctrine.  *See Reply* [#74] at 21 n.9; *Response* [#70] at 13-14.  Plaintiff-Intervenor represents that this would amount to approximately 60% of his gross recovery being paid in attorneys' fees which, in addition to the reasons stated above, the Court finds to be neither fair nor reasonable.[10]

---

[10]  Because the Court denies Plaintiff's request for attorneys' fees under the common fund doctrine, the Court does not consider Plaintiff-Intervenor's request that such fees be offset to account for his own legal costs regarding the Motion to Allocate.  *Response* [#70] at 14-15.

Accordingly, the Court the Motion [#62] is **denied** to the extent that Plaintiff seeks an order that the settlement allocation be made net of the pro rata payment to Plaintiff's counsel of their fees and costs under the common fund doctrine.

## V.  Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#62] is **GRANTED in part** and **DENIED in part**.  The Motion is **granted** to the extent that Plaintiff seeks the below amendments to the Final Judgment [#59].  The Motion is **denied** in all other respects.

IT IS FURTHER **ORDERED** that the Final Judgment [#59] is **AMENDED**.  The Clerk of the Court shall enter an Amended Final Judgment which deletes the following language from the Final Judgment [#59] currently on the docket:

> It is FURTHER ORDERED that final judgment is hereby entered in favor of Plaintiff, Jamie Lee Dowling, Plaintiff-Intervenor, Shawn Cook and against Defendants, General Motors, Key Safety Systems, Inc.

> It is FURTHER ORDERED that pursuant to Fed. R. Civ. P. 54(d)(1) and the procedures set forth in D.C.COLO.LCivR 54.1, the plaintiff and intervenor may have their costs by filing a bill of costs within 14 days of entry of judgment.

Dated:  September 16, 2019

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

- 30 -