IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00445-KLM

JAMIE LEE DOWLING, individually, as surviving mother of Landyn Scott Dowling,

      Plaintiff,

SHAWN COOK,

      Plaintiff-Intervenor,

v.

GENERAL MOTORS LLC, and
KEY SAFETY SYSTEMS, INC.,

      Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff-Intervenor's **Motion for Attorneys'
Fees and Costs Pursuant to Fed. R. Civ. P. 54(d)** [#67][1] (the "Motion"). The Court has
reviewed the Motion [#67], Response [#75], Reply [#77], exhibits, the case file, and the
applicable law, and is sufficiently advised in the premises. For the reasons set forth
below, the Motion [#67] is **DENIED**.

**I. Background**

This wrongful death action arises from the tragic deaths of Jamie Lee Dowling's
("Plaintiff") two young children in a car accident that occurred on March 9, 2013. Plaintiff

---

[1] "[#67]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF). This convention is used throughout this Order.

filed the lawsuit in this Court on March 3, 2015, seeking to recover pursuant to the Colorado Wrongful Death Act, Colo. Rev. Stat. § 13-21-201(1)(c). *Compl.* [#1]. The Complaint [#1] alleges that Plaintiff's car, a 2008 Chevrolet Cobalt, was defective in its design and manufacture, which resulted in loss of control and subsequent failure of the air bags to deploy. The matter was transferred to the Southern District of New York on March 16, 2015, *see* [#6], and thereafter was remanded to this Court on March 10, 2017, largely for purposes of approval and distribution of settlement proceeds. *See* [#8-2]. On April 27, 2017, all settlement proceeds with respect to Plaintiff's daughter, Raylee Kay Dowling ("Raylee"), were allocated to Plaintiff by the Court. *Minute Order* [#17].

On August 10, 2017, Plaintiff filed a Motion to Allocate Settlement Proceeds [#19] (the "Motion to Allocate") with respect to her son, Landyn Scott Dowling. Plaintiff-Intervenor Shawn Willis Cook ("Cook"), who is Landyn's biological father, was permitted to intervene in this case on November 3, 2017. He thereafter filed a Response [#26] and Exhibits [#27] seeking 50% of the settlement proceeds. The Court scheduled an evidentiary hearing, which was held on January 9-10, 2018. *See* [#49, #50]. On March 30, 2018, the Court issued a Final Order and Judgment [#58] (the "Final Order") that allocated sixty-five percent of the gross settlement proceeds to Plaintiff Dowling, and thirty-five percent of the gross settlement proceeds to Plaintiff-Intervenor Cook. The Court explicitly denied Plaintiff's request that the Court allocate the settlement proceeds <u>after</u> deduction for Plaintiff's attorneys' fees and costs. *Final Order* [#58] at 13-14. Pursuant to Fed. R. Civ. P. 58(a) and the Final Order, the Clerk of the Court issued the Final Judgment [#59] which entered final judgment in favor of Plaintiff and Plaintiff-

Intervenor against Defendants and ordered that Plaintiff and Plaintiff-Intervenor file bills of costs within 14 days of entry of the judgment.[2]

On May 4, 2018, Mr. Cook filed the instant Motion [#67] seeking attorneys' fees and costs pursuant to C.R.S. § 13-17-102 and Federal Rule of Civil Procedure 54(d) ("Rule 54(d)"). Mr. Cook avers that he is entitled to these fees and costs because Plaintiff's Motion to Allocate [#19] was "substantially groundless and substantially vexatious, [and] because at least 30 factual allegations contained in Ms. Dowling's Declaration were false, misleading, exaggerated, unsupported by any admissible evidence, or substantially or overwhelmingly refuted by evidence presented at the evidentiary hearing." *Motion* [#67] at 2-3. As such, Mr. Cook seeks "his attorneys' fees incurred in litigating against Ms. Dowling's and her counsel's substantially vexatious motion, in the total amount of $42,866.60."[3] *Id.* at 25. In support of the Motion, Mr. Cook provides the Court with a transcript of the evidentiary hearing, exhibits admitted into evidence at the hearing, and affidavits pursuant to D.C.COLO.LCivR 54.3 with attachments. *Pl.-Intervenor's Exs. A-C* [#67-1 through #67-28].

## II. Analysis

---

[2] Concurrently with this Order, the Court grants in part and denies in part Plaintiff's Motion to Alter/Amend March 30, 2018 Order and Judgment [#62] which, among other things, amends the Final Judgment [#59] to reflect that judgment is not entered in favor of Plaintiffs against Defendants and that Plaintiffs may not collect their costs against Defendants pursuant to the judgment. *Order* [#82].

[3] According to the Motion, $42,866.60 accounts for 70% of the attorneys' fees Mr. Cook incurred in this matter. [#67] at 25. In addition to this amount, Mr. Cook also seeks $1,991.74 in costs incurred in this matter. *Id.* at 27.

The Court's "'basic point of reference' when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his [or her] own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Kazazian v. Emergency Serv. Physicians, P.C.*, 300 F.R.D. 672, 675 (D. Colo. 2014) (internal quotations omitted, citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)). Mr. Cook moves for his attorneys' fees and costs incurred in intervening in this action and responding to Plaintiff's Motion to Allocate [#19] pursuant to C.R.S. § 13-17-102 and Rule 54(d). The Court addresses Mr. Cook's request under each theory in turn.

## A.  C.R.S. § 13-17-102

Mr. Cook first seeks attorneys' fees pursuant to a Colorado statute that provides:

[I]n any civil action of any nature commenced or appealed in any court of record in this state . . . [t]he court shall assess attorney fees if . . . it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct . . . As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

C.R.S. § 13-17-102(2), (4).[4] Mr. Cook argues that Plaintiff's Motion to Allocate [#19] was substantially groundless and vexatious as demonstrated by Plaintiff's allegations which were, according to Mr. Cook, "false, misleading, exaggerated, unsupported by any

---

[4] Generally, the Court holds a hearing on a request for attorneys' fees, but since "[n]either party has requested a hearing . . . the Court finds that both sides have waived their right to a hearing." *Kazazian*, 300 F.R.D. at 675.

admissible evidence, or substantially or overwhelmingly refuted by evidence presented at the evidentiary hearing." *Motion* [#67] at 5.

In response, Plaintiff asserts the threshold argument that Mr. Cook is precluded from seeking attorneys' fees pursuant to C.R.S. § 13-17-102 because the Colorado statute is preempted by Federal Rule of Civil Procedure 11 ("Rule 11"), with which Mr. Cook failed to comply. *Response* [#75] at 2-6. Plaintiff correctly notes that this District has consistently found that Rule 11's safe-harbor provision[5] preempts C.R.S. § 13-17-102 and that therefore, failure to comply with the safe-harbor provision bars a motion for attorney's fees pursuant to C.R.S. § 13-17-102. *Response* [#75] at 3; *see, e.g., Hanover Ins. Grp. v. iCarpets, Inc.*, No. 16-cv-01013-RBJ, 2017 WL 6524657, at *6-7 (D. Colo. Dec. 21, 2017); *Hach Co. v. In-Situ, Inc.*, No. 13-cv-02201-CBS, 2016 WL 9725765, at *10-11 (D. Colo. Nov. 22, 2016); *DeJean v. Grosz*, No. 13-cv-02381-NYW-MJW, 2015 WL 4504932, at *3 (D. Colo. July 24, 2015); *Christou v. Beatport, LLC*, No. 10-cv-02912-RBJ-KMT, 2014 WL 1293296, at *3 n.1 (D. Colo. Mar. 31, 2014); *Kazazian*, 300 F.R.D. at 676-78; *Spratt v. Leinster*, No. 06-cv-01526-WDM-KLM, 2007 WL 2412826, at *1 (D. Colo. Aug. 21, 2007); *McCoy v. West*, 965 F. Supp. 34, 35-36 (D. Colo. 1997); *In re Johnson*, 485 B.R. 642, 649 (Bankr. D. Colo. 2013). *Cf., Diebold Enters. Sec. Sys., Inc.*

---

[5] Unlike C.R.S. § 13-17-102, "Rule 11(c)(2) requires that a party seeking sanctions for a violation of Rule 11(b) serve its motion on the opposing party twenty-one days before filing it, thereby providing the opposing party 'a safe harbor during which time she could have dismissed her case without fear of sanctions under Rule 11.'" *Hanover Ins. Grp. v. iCarpets, Inc.*, No. 16-cv-01013-RBJ, 2017 WL 6524657, at *7 (D. Colo. Dec. 21, 2017) (quoting *Kazazian*, 300 F.R.D. at 676-77). Rule 11's "'safe harbor' provision is strictly enforced in this circuit." *Wolf v. Petrock*, No. 08-cv-02749-PAB-KMT, 2010 WL 2232353, at *2 (D. Colo. June 2, 2010) (citing *Roth v. Green*, 466 F.3d 1179, 1192-93 (10th Cir. 2006) (holding that substantial compliance with Rule 11's "safe harbor" provision was not sufficient)).

*v. Low Voltage Wiring, Ltd.*, No. 13-cv-00505-REB-KLM, 2014 WL 1491327 (D. Colo. Apr. 14, 2014) (noting *Johnson*, 485 B.R. 642, had found the statute preempted, the court found that even assuming the statute was applicable, the request for attorneys' fees failed on other grounds).

Applying an *Erie* analysis, these courts have reasoned that C.R.S. § 13-17-102 "is merely a procedural statute regarding sanctions based on conduct in the litigation" and not substantive law under *Erie*. *Hach Co.*, 2016 WL 9725765, at *11. Thus, this District has repeatedly held "that, 'to the extent Colo. Rev. Stat § 13-17-101 *et seq.* is inconsistent with the procedural safe-harbor provisions of Rule 11, it is preempted.'" *DeJean*, 2015 WL 4504932, at *3 (quoting *Spratt*, 2007 WL 2412826, at *1; citing *Kazazian*, 300 F.R.D. at 676-77; *Martinson v. Professional Bureau of Collections of Maryland, Inc.*, No. 09-cv-02145-MSK-BNB, 2010 WL 3777282, at *3 (D. Colo. Sept. 21, 2010)); *see also Hach Co.*, 2016 WL 9725765, at *11 ("Because the statute is procedural, the District of Colorado consistently holds § 13-17-102 preempted by Rule 11's safe-harbor provision." (collecting cases)).

Mr. Cook does not address this issue in his Motion [#67] and nowhere contends that he has complied with Rule 11's safe-harbor provision. Instead, Mr. Cook argues in his Reply that C.R.S. § 13-17-102 "is treated as substantive law under Tenth Circuit precedent [and] therefore, [ ] is not preempted by Rule 11." [#77] at 5. Mr. Cook further argues that the decisions finding C.R.S. § 13-17-102 preempted by Rule 11 under *Erie* are inapplicable to the present case because they were issued by courts sitting in federal question jurisdiction, not diversity. *Id.* at 6.

As an initial matter, "'the *Erie* doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law.'" *Johnson*, 485 B.R. at 645 (quoting *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 541 n.1 (2d Cir. 1956)). Thus, although Mr. Cook is correct in that federal courts sitting in diversity jurisdiction must apply the substantive law of the forum state, the Court fails to see how analyzing C.R.S. § 13-17-102 under *Erie* would differ whether the Court's jurisdiction is based on diversity of citizenship or federal question. *See also Hach Co.*, 2016 WL 9725765, at *11 ("In cases involving state law claims, the court applies the substantive law of the forum state but federal procedural law.") (citations omitted).

"[T]he 'first analytical step' in an *Erie* case 'is to determine whether [a state] statute collides with any federal procedural rule.'" *Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1276-77 (10th Cir. 2011) (quoting *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1539 (10th Cir. 1996)) (brackets in original). "The question is not whether the federal and state rules overlap. Rather, it is 'whether, when fairly construed, the scope of [the Federal Rule] is sufficiently broad' to cause a direct collision with the state law or, implicitly, to control the issue before the court, thereby leaving no room for operation of [the state] law.'" *Trierweiler*, 90 F.3d at 1539-40 (quoting *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987)) (alteration in original) (internal quotation marks omitted). "In such a case, . . . we must apply the Federal Rule unless the Rule violates the Rules Enabling Act or is unconstitutional." *Tolliver*, 636 F.3d at 1277; *see McCoy*, 965 F. Supp. at 35-36 ("When a matter is covered by a Federal Rule, a federal court need not perform a full *Erie* analysis to determine whether the matter is substantive or procedural.").

Here, "[c]ourts in this district have found Rule 11's safe[-]harbor provision to be in direct conflict with [C.R.S.] § 13-17-102." *Kazazian*, 300 F.R.D. at 678 (citing *Martinson*, 2010 WL 3777282, at *3; *Spratt*, 2007 WL 2412826, at *1 (denying C.R.S. § 13-17-102 motion filed during pendency of the case for failure to comply with Rule 11's safe-harbor provision); *Wind v. Aegis Sec. Ins. Co.*, No. 06-cv-01811-EWN-BNB, 2007 WL 2045504, at *1 n.1 (D. Colo. July 10, 2007) (noting that motion under C.R.S. § 13-17-102 was untimely under Rule 11); *McCoy*, 965 F. Supp. at 35 (denying motion brought under Rule 11 and Colorado statute because "the 'safe-harbor' provision of Rule 11 controls"); *Johnson*, 485 B.R. at 649 (finding that Bankruptcy Rule 9011 preempted C.R.S. § 13-17-102)); *see also Hach Co.*, 2016 WL 9725765, at *11 ("In this case, Rule 11 clearly covers the situation. On that basis alone, the court should be able to conclude that [C.R.S.] § 13-17-102 is preempted to the extent it conflicts with Rule 11."). "The conflict arises because although '[b]oth Rule 11 and § 13-17-102 allow sanctions against a party who has brought frivolous or groundless claims,' the Colorado statute contains no safe harbor provision like that in Rule 11." *Hanover Ins. Grp.*, 2017 WL 6524657, at *7 (quoting *Kazazian*, 300 F.R.D. at 677). Therefore, "[t]he lack of a safe harbor provision in the Colorado statute creates 'a true conflict' between Rule 11 and the state statute, so the federal rule must apply." *Id.* (quoting *Kazazian*, 300 F.R.D. at 678).

While finding a true conflict between C.R.S. § 13-17-102 and Rule 11 is sufficient for purposes of the Court's *Erie* analysis, "many opinions from this court nonetheless analyze whether [C.R.S.] § 13-17-102 is substantive or procedural." *Hach Co.*, 2016 WL 9725765, at *11 (noting courts in this District "no doubt entertain this additional analysis

because the Tenth Circuit has held that 'section 13-17-102 clearly may apply to claims brought in the District of Colorado.'" (quoting *Lorillard*, 611 F.3d at 1217)).[6]

Mr. Cook cites several cases for the proposition that "'[i]n the Tenth Circuit, attorney fee statutes are considered substantive'" especially where, as is here, the Court exercises diversity jurisdiction. *Reply* [#77] at 5 (quoting *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000); citing *Gebremedhin v. American Family Mut. Ins. Co.*, 2016 WL 738588, at *2 (D. Colo. Feb. 24, 2016) ("Statutes relating to attorney fees are substantive law in the Tenth Circuit."); *Shell v. Henderson*, 2013 WL 4838907, at *6 (D. Colo. Sept. 10, 2013) ("In the Tenth Circuit . . . attorney fee statutes promulgated by state courts are considered substantive.")). However, while Mr. Cook is clearly correct in that federal courts sitting in diversity jurisdiction must apply the substantive law of the forum state, *Advanced Career Technologies, Inc. v. John Does 1-10*, 100 F. Supp. 3d 1105, 1107 (D. Colo. 2015), he fails to recognize that attorneys' fees statutes are not *always* considered substantive for purposes of *Erie*.

The Tenth Circuit has made clear that attorneys' fees statutes can be either substantive or procedural. *Tolliver*, 636 F.3d at 1279 (citing *Jones*, 203 F.3d at 757). In

---

[6] To the extent that Mr. Cook relies on the Tenth Circuit's statement in *Lorillard* "that C.R.S. § 13-17-102 'clearly may apply to claims brought in the District of Colorado[,]'" *Reply* [#77] at 6 (quoting 611 F.3d at 1217), the Court finds this statement unpersuasive for the reasons stated in *Hach Co.* There, the court noted that *Lorillard* cites *Harrison v. Luse*, 760 F. Supp. 1394, 1400 (D. Colo. 1991), *aff'd*, 951 F.2d 1259, 1991 WL 270031 (10th Cir. 1991) (unpublished opinion), which predated the 1993 Amendment that introduced Rule 11's safe-harbor provision and that *Lorillard* "does not discuss preemption or whether the movant had complied with Rule 11's safe harbor." 2016 WL 9725765, at *11. While the court in *Hach Co.* acknowledged that "that the Tenth Circuit has not expressly analyzed the preemption issue between Rule 11 and § 13-17-102," the court nevertheless found that "Colorado courts [had] provide[d] clarity, 'characteriz[ing] § 13–17–102 as a sanction, rather than a substantive right.'" *Id.* (quoting *Kazazian*, 300 F.R.D. at 677).

addressing the language found in *Jones*, which Mr. Cook quotes, the Tenth Circuit has explained that this and other "holdings comport with the Supreme Court's determination that statutory provisions permitting an award of attorneys' fees are substantive where the statute permits the prevailing party in certain classes of litigation to recover attorneys' fees."[7] *Tolliver*, 636 F.3d at 1279 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52-53 (1991); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 n.31 (1975); *Hanna v. Plumer*, 380 U.S. 460, 469 (1965)). As the Tenth Circuit explained more recently:

> Substantive fees are those that "are tied to the outcome of the litigation" and procedural fees are those that are "generally based on a litigant's bad faith conduct in litigation." These labels are shorthand for those attorney fees that are governed by *Erie* (substantive fees) and those that are not (procedural fees). Substantive fees are part and parcel of the cause of action over which we have diversity jurisdiction. For example, if the cause of action is for bad-faith denial of insurance coverage and state law authorizes an award of attorney fees to a successful insured, then the right

---

[7] Although Mr. Cook correctly notes that *Tolliver* did not specifically address C.R.S. § 13-17-102, the Court does not agree with Mr. Cook's contention that *Tolliver's* "general framework" is inapplicable to the present dispute. *Reply* [#77] at 6-7; *see Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 460-61 (10th Cir. 2017), *cert. denied sub nom. Chieftain Royalty Co. v. Nutley*, 139 S. Ct. 482 (2018) (reiterating *Tolliver's* "general framework" with respect to the difference between attorneys' fee statutes that are substantive or procedural); *Kazazian*, 300 F.R.D. at 677 n.6 (applying *Tolliver* to the issue presented here, whether a request for attorneys' fees pursuant to C.R.S. § 13-17-102 is substantive or procedural). To the extent that Mr. Cook argues that *Tolliver* does not apply to this matter because it was futile for Plaintiff to comply with Rule 11's safe-harbor provision, Mr. Cook does not cite any legal authority in support of this proposition. Moreover, the Court fails to see how compliance with Rule 11's safe-harbor provision was futile given that Mr. Cook's Motion [#67] primarily attacks statements made in Ms. Dowling's Declaration [#19-2] which was filed as an attachment to the Motion to Allocate [#19] approximately five months before the January 9-10, 2018 motion hearing. The purposes of the safe-harbor provision include "protecting litigants from sanctions whenever possible in order to mitigate Rule 11's chilling effect . . . and encouraging the withdrawal of papers that violate the rule without involving the district court[.]" 5A Charles Alan Wright et al., *Federal Practice and Procedure* § 1337.2 (4th ed.). Thus, as the advisory committee notes, "a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." Fed. R. Civ. P. 11(b) and (c) advisory committee's note to 1993 amendment.

to an award of attorney fees is part of the state substantive right and the federal court must recognize it. In contrast, an attorney-fee award against bad-faith conduct in the litigation has nothing to do with the nature of the cause of action and does not derive in any way from state substantive law. "[F]ee-shifting here is not a matter of substantive remedy, but of vindicating judicial authority." One way to see that *Erie* deference to state law has no purchase in this context is to note that "there is no risk that [an award of sanctions for bad-faith conduct during litigation] will lead to forum-shopping."

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 460-61 (10th Cir. 2017), *cert. denied sub nom. Chieftain Royalty Co. v. Nutley*, 139 S. Ct. 482 (2018) (modifications in original, citations omitted); *see also Kazazian*, 300 F.R.D. at 677 n.6 (discussing the difference between substantive fees statutes and procedural fees statutes); *Johnson*, 485 B.R. at 645 ("If the [state attorneys' fee] statute is procedural, federal law applies, but if it is substantive, then the court applies state law." (citing *Tolliver*, 636 F.3d at 1279)).

Here, Mr. Cook does not argue that his request for fees pursuant to C.R.S. § 13-17-102 is "tied to the outcome of the litigation" and, as noted above, this District has routinely found that C.R.S. § 13-17-102 concerns a litigant's "bad faith conduct in litigation." In *Kazazian*, the court observed that "Colorado courts characterize § 13-17-102 as a sanction, rather than a substantive right." 300 F.R.D. at 677 (citing *City of Aurora ex rel. Utility Enterprise v. Colo. State Engineer*, 105 P.3d 595, 618 (Colo. 2005) ("An award of attorney fees [under § 13-17-102] is an important sanction against an attorney or party who improperly instigates or prolongs litigation.")); *see also Hach Co.*, 2016 WL 9725765, at *11 ("Section 13-17-102 is merely a procedural statute regarding sanctions based on conduct in the litigation, not a substantive law for further *Erie* analysis.").

The other authority Mr. Cook cites for the proposition that C.R.S. § 13-17-102 should be applied as substantive law is unpersuasive. First, two of the cases Mr. Cook cites applied a different Colorado attorneys' fees statute, C.R.S. § 13-17-201, which, unlike C.R.S. § 13-17-102, "requires an award of fees if a Rule 12(b) motion is granted." *See Shell*, 2013 WL 4838907, at *2 (applying C.R.S. § 13-17-101 where attorneys' fees were sought pursuant to the Fed. R. Civ. P. 12(b) dismissal of plaintiff's claims); *see also Gebremedhin*, 2016 WL 738588, at *2 (applying C.R.S. § 13-17-101 where attorneys' fees were sought pursuant to the Fed. R. Civ. P. 12(b) dismissal of third-party claims); *Walters v. Townsend Farms, Inc.*, No. 13-cv-02730-CMA-CBS, 2015 WL 557178, at *4 (D. Colo. Feb. 9, 2015) (addressing a motion for attorneys' fees under C.R.S. § 13-17-201 and concluding that it did not apply to the dismissal of claims pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)).

Second, while the other two decisions cited by Mr. Cook purport to apply C.R.S. § 13-17-102 as substantive law, neither decision addressed *Erie* or the issue of preemption, and both decisions were issued before the ruling in *Kazazian*. *See Wolf v. Petrock*, No. 08-cv-02749-PAB-KMT, 2010 WL 2232353 (D. Colo. June 2, 2010); *New Salida Ditch Co. v. United Fire & Cas. Ins. Co.*, No. 08-cv-00391-JLK, 2009 WL 5126498, at *12 (D. Colo. Dec. 18, 2009), *aff'd sub nom.*, 400 F. App'x 338 (10th Cir. 2010). Moreover, both decisions simply considered the application of C.R.S. § 13-17-102 within the context of a case's summary dismissal but, ultimately, did not grant the request for fees pursuant to that statute. *Wolf*, 2010 WL 2232353, at *2 (considering a request for attorneys' fees pursuant to C.R.S. § 13-17-102 but ultimately finding the statute inapplicable to the

dismissal of federal claims); *New Salida Ditch Co.*, 2009 WL 5126498, at *12 (considering a request for attorneys' fees pursuant to C.R.S. § 13-17-102 after summary judgment entered in defendant's favor but declining to award fees until plaintiff showed cause why the request should not be granted).

Here, adjudication of the Motion to Allocate did not dispose of Plaintiff's claims against Defendants. Although the Court acknowledges that the Motion to Allocate pertained to the only issue truly at dispute in this matter, the Court's role in this case is much broader. *See Suggestion of Remand* [#8-1] at 1 (stating that this case was remanded to the Court "*in its entirety* . . . to oversee approval of the settlement and distribution of the settlement in accordance with Colorado's wrongful death statute.") (emphasis added). Thus, it cannot be said that the attorneys' fees Mr. Cooks seeks pursuant to the Motion to Allocate are "tied to the outcome of the litigation" or "part and parcel of the cause of action over which [the Court] [has] diversity jurisdiction." *Chieftain*, 888 F.3d at 460. Rather, Mr. Cook seeks attorneys' fees for the allegedly bad faith arguments raised in the Motion to Allocate which is an ancillary dispute to the claims against Defendants. Mr. Cook cites no authority to support the conclusion that, under these circumstances, the invocation of C.R.S. § 13-17-102 constitutes a substantive right to attorneys' fees rather than a sanction.

Therefore, as this District has previously held, because C.R.S. § 13-17-102 "does not contain a similar safe harbor provision, the Court finds that a true conflict exists between Rule 11's safe harbor provision and § 13-17-102." *Kazazian*, 300 F.R.D. at 678 (citing *Tolliver*, 636 F.3d at 1277). Mr. Cook does not dispute that he failed to comply

with Rule 11(c). Accordingly, the Court finds that Rule 11 preempts C.R.S. § 13-17-102 and **denies** the Motion [#67] to extent that Mr. Cook seeks attorneys' fees pursuant to C.R.S. § 13-17-102.

## B.    Federal Rule of Civil Procedure 54(d)

Mr. Cook next seeks attorneys' fees pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. That rule provides: "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Rule 54(d) further provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). "In general, the litigant who is the prevailing party for purposes of attorney's fees is also the prevailing party for purposes of costs." *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001). A motion for attorneys' fees pursuant to Rule 54(d) must be timely filed,[8] "specify the judgment and the statute, rule, or other grounds entitling the movant to the award"; "state the amount sought or provide

---

[8] Here, there is no contention that Plaintiff-Intervenor's Motion [#67] is untimely and the fact that the Court has subsequently directed the Clerk of the Court to enter an Amended Final Judgment does not require Plaintiff-Intervenor to refile the Motion. *See Radtke v. Caschetta*, 822 F.3d 571, 574 (D.C. Cir. 2016) (holding that a fee petition filed within fourteen days of the initial final judgment but before an amended judgment was entered still satisfies the "no later than" requirement of Rule 54); Fed. R. Civ. P. 54 advisory committee's notes (1993) ("A new period for filing will automatically begin if a new judgment is entered following . . . the granting of a motion under Rule 59."). To the extent that Plaintiff argues Rule 54 does not apply at this stage of the proceedings because the Court's Final Order [#58] was not, in fact, a final order and judgment for purposes of Rule 54, *Response* [#75] at 12 n.8, the Court disagrees for the reasons stated in the Court's concurrent Order [#82] regarding Plaintiff's Motion to Alter/Amend March 30, 2018 Order and Judgment [#62].

a fair estimate of it"; and "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P. 54(d)(2)(B).

"As is apparent from the language of Rule 54(d)(1), 'the determination of who qualifies as a prevailing party is central to deciding whether costs are available.'" *Barber*, 254 F.3d at 1233-34 (quoting Wright & Miller, *Federal Practice & Procedure* § 2667). Generally, "'the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d)(1).'" *Id.* at 1234 (quoting Wright & Miller, *Federal Practice & Procedure*, § 2667) (brackets omitted). "[W]hile costs presumptively are awarded to the prevailing party, . . . a trial court still has the discretion to act under Rule 54(d)(1). *Id.* If the court exercises its discretion to not award costs, the court must state a valid reason. *Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 722 (10th Cir. 2000).

Where "neither side entirely prevailed, or when both sides prevailed, or when the litigation was thought to be the result of fault on the part of both parties, some courts have denied costs to both sides." *Hach Co.*, 2016 WL 9725765, at *17 (quoting *Barber*, 254 F.3d at 1234-35; citing *Howell Petroleum Corp. v. Samson Res. Co.*, 903 F.2d 778, 783 (10th Cir. 1990) ("The court was within its discretion to refuse to award costs to a party which was only partially successful."); *Rogers v. United States*, No. 97-2666-JWL, 2000 WL 382015, at *2 (D. Kan. Mar. 17, 2000) (denying costs to both sides because both were partially successful); *All W. Pet Supply Co. v. Hill's Pet Prod. Div., Colgate-Palmolive Co.*, 153 F.R.D. 667, 669-70 (D. Kan. 1994) (same; collecting cases)). "Denying costs to both sides has been found within the trial court's discretion where . . . neither party prevailed on its claims." *Id.* (citing Wright & Miller, *Federal Practice and Procedure* § 2668

n.31). Ultimately, however, where "the court exercises its discretion[,] the identification of the prevailing party may [in the end] become so unimportant as to be almost immaterial." *Barber*, 254 F.3d at 1235 (quoting *Roberts v. Madigan*, 921 F.2d 1047, 1058 (10th Cir. 1990)) (brackets in original).

In the Motion, Mr. Cook argues that he is entitled to the costs he incurred because he prevailed on Plaintiff's Motion to Allocate [#19], "as the Court awarded him a substantial percentage of the relief he sought in its Final Order and Judgment." [#67] at 26. Mr. Cook asserts that, although he sought a 50% apportionment and was ultimately allocated only 35% by the Court, he is still deemed a "prevailing party" given that 35% of the gross settlement proceeds is substantial relief, particularly where the Motion to Allocate sought a 0% allocation for Plaintiff-Intervenor. *Id.*

As an initial matter, Mr. Cook does not provide the Court with any Tenth Circuit authority demonstrating that an award of attorneys' fees and costs pursuant to Rule 54(d) is applicable to these circumstances, i.e., where an intervening party petitions for and obtains a partial allocation of settlement proceeds from the underlying lawsuit. *See generally Motion* [#67]; *Reply* [#77]. Nevertheless, applying the Rule 54(d) rubric to the dispute at hand, the Court agrees with the arguments raised by Plaintiff that Mr. Cook is not the "prevailing party" with respect to Plaintiff's Motion to Allocate [#19] and is thus, not entitled to attorneys' fees and costs pursuant to Rule 54(d).[9]

---

[9] Plaintiff's point that the Motion to Allocate [#19] addressed an issue ancillary to the claims in this case is well-taken given that those claims were resolved by the GM Settlement. Regardless of whether Rule 54(d) is the appropriate avenue for Mr. Cook to seek attorneys' fees and costs based on the Final Judgment [#59], the Court agrees with Plaintiff that "[t]here is no prevailing party" in this circumstance and that "Mr. Cook did not prevail in the action over [Plaintiff]." *Response* [#75] at 12.

As Plaintiff correctly notes, the allocation of settlement funds in this case was governed by Colorado's Wrongful Death Statute, which provides that the "father and mother shall have an equal interest in the judgment" where the death of a minor child is involved and the parents are living apart, unless one parent moves to not allocate the funds equally. C.R.S.A. § 13-21-20l(l)(c); *see Response* [#75] at 13. Plaintiff's Motion to Allocate [#19] sought an Order from the Court deviating from this presumptive equal allocation while, in opposition, Mr. Cook sought equal allocation of the settlement funds. The Court granted Plaintiff's Motion to Allocate on this point by awarding 65% of the settlement to Plaintiff and 35% of the settlement to Mr. Cook. *Final Order* [#58] at 14. In light of this, the Court agrees with Plaintiff that "[t]he fact that the [C]ourt did not choose the specific allocation amount urged by either party does not somehow make [Mr.] Cook the prevailing party." *See Howell Petroleum Corp.*, 903 F.2d at 783; *Rogers*, 2000 WL 382015, at *2; *All W. Pet Supply Co.*, 153 F.R.D. at 669-70. Indeed, the Court's Final Order [#58] granted in part and denied in part the Motion to Allocate. This outcome, as Plaintiff states, means that neither side can claim a complete victory or a complete loss. *Response* [#75] at 14.

In Mr. Cook's Reply, he reiterates that he obtained substantial relief in the allocation while Plaintiff's Motion to Allocate sought a 0% allocation of settlement proceeds to him. [#77] at 8. Therefore, Mr. Cook argues that even if Plaintiff "'prevailed' at all on her Motion to Allocate, [he] obtained a greater percentage of what he was seeking compared with what Ms. Dowling was seeking." *Id.* at 8-9 ("[Plaintiff-Intervenor] obtained

70% of his requested relief (35% of 50% requested), whereas [Plaintiff] obtained only 65% of her requested relief (65% of 100% requested).").

The Court finds this argument unavailing. First, Mr. Cook cites no authority for this assertion. Second, the Court finds no authority for the proposition that "substantial relief" (for purposes of a prevailing party analysis) is measured by dividing the dollar amount a party sought by the amount that party ultimately obtained.

Generally speaking, the concept of "substantial relief" is considered where a plaintiff's "claims are related [and] failure on some claims [does] not preclude full recovery if plaintiff achieves success on a significant, interrelated claim." *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995); *see Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."). Again, whether this concept even applies to a dispute over the allocation of settlement proceeds is questionable at best given that the cases cited above involved civil rights litigation and a claim for fees pursuant to 42 U.S.C. § 1988. Regardless, neither Plaintiff nor Mr. Cook obtained the relief that either party sought. While Mr. Cook may have obtained 5% more of the relief he sought compared to Plaintiff, the Court fails to see how this distinction makes a difference when Plaintiff obtained a larger share of the settlement proceeds that was above the presumptive equal share under Colorado's Wrongful Death Statute.

Accordingly, for the reasons stated above, the Court **denies** the Motion [#67] to the extent that Mr. Cook seeks attorneys' fees and costs pursuant to Fed. R. Civ. P. 54(d).

*See Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996) ("In the event of a mixed judgment, however, it is within the discretion of a district court to require each party to bear its own costs."); *accord. Barber*, 254 F.3d at 1235.

### III.  Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#67] is **DENIED**.

Dated:  September 16, 2019

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge